# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| TANYA ANDREWS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RELIANCE STANDARD LIFE )<br>INSURANCE COMPANY, )<br>)<br>Defendant. )<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br><br>_____ |

## COMPLAINT

Plaintiff Tanya Andrews ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Reliance Standard Life Insurance Company ("RSL") relating to the provision of ERISA-governed disability benefits under the Infirmary Health Systems, Inc. long-term disability plan ("the Plan") sponsored by Plaintiff's former employer, Infirmary Health Systems, Inc. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

1

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a), to secure disability benefits due to Plaintiff through an ERISA welfare benefits plan sponsored by Infirmary Health Systems, Inc insured through a group insurance policy issued by RSL insuring the Plan.

2. The Plaintiff seeks any and all benefits to which she may be entitled should this Court determine she is "disabled" under the terms of the Plan. Such benefits include all other available long-term disability benefits.

3. Plaintiff seeks benefits based on the conditions documented in her medical records and other information before RSL Plaintiff's disabling conditions include CRPS, hypothyroidism, hyperlipidemia, type 2 diabetes, metabolic syndrome, severe obesity, s/p bariatric surgery, cervicalgia, insomnia, chronic bladder pain, IBS, GERD, pituitary adenoma, arthritis, thoracic radiculitis, anxiety, depression, and gout.

4. These conditions prevent Plaintiff from being able to perform the material and substantial duties of her occupation as a rehabilitation nurse. Specifically, Plaintiff is unable to engage safely in any physical activity that involves

pushing, pulling, lifting, carrying, stooping, bending, standing, or walking to a level that would meet the requirements of her medium physical-demand occupation.

## JURISDICTION

5. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

6. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

7. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District, the breaches of duty alleged herein occurred in this District, and the Defendant may be found or reside in this District and, pursuant to 28 U.S.C. § 1391(b), in that the cause of action arose in this District.

## PARTIES

8. As of the filing of this Complaint, Plaintiff Tanya Andrews is a resident citizen of Alabama and this District.

9. Defendant Reliance Standard Life Insurance Company ("RSL") is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

10. RSL is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

11. One of RSL's designated agents for service of process is:

**c/o CT Corporation**
**2 North Jackson Street**
**Suite 605**
**Montgomery, AL 36104**

12. RSL is an entity exercising authority or control respecting the management or disposition of The Plan assets or the personnel exercising said authority over The Plan assets.

13. RSL is an entity providing services to The Plan at issue.

14. RSL is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

15. Upon information and belief, The Plan at issue was funded, at least in part, by a long-term disability insurance policy sold by RSL, the company which also underwrote the policy.

16. This long-term disability policy was purchased by Plaintiff's employer for the purpose of conferring a benefit upon Plaintiff and other employees.

17. As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under The Plan as that term is used in 29 U.S.C. § 1132.

18. Under the terms of The Plan providing for disability benefits, Plaintiff is "disabled" as defined by The Plan.

19. There are no Plan documents indicating that RSL has an enforceable grant of discretionary authority as the Plan or Claims Administrator or that any express delegation has occurred.

## RSL'S LIABILITY

20. Ms. Andrews worked at the Mobile Infirmary as a rehabilitation nurse for over 20 years until she developed complex regional pain syndrome ("CRPS"), thoracic radiculitis, and other issues after sustaining a fall at work when a chair in which she was sitting collapsed, causing her to fracture part of her scapula in her left shoulder.

21. Ms. Andrews's occupation as a registered nurse, especially one involved with patients needing rehabilitative services, is physically demanding. One of her primary responsibilities in the course of performing this occupation on a day-to-day basis is assisting patients with their physical needs. That assistance nearly always required helping patients with transferring in some capacity, a task that necessarily involves handing significant and often unstable weight.

22. In Ms. Andrews's instance, she was responsible for this and other activities, including performing complete physical assessments of the whole body, doing wound-care, assisting patients with ambulation, and admitting and discharging patients.

23. Frequently she dealt with weights of over 50 pounds when having to turn patients or help transfer or transport them.

24. The Dictionary of Occupational Titles classifies Ms. Andrews's occupation as a "medium" physical-demand occupation.

25. O*Net includes the description of this job's physical requirements, indicating that providing "personal assistance" is the single most important characteristic of the job and that "performing general physical activities" is also of heightened importance.

26. After Ms. Andrews suffered her fall, she quickly found she was no longer able to continue working her in occupation as a nurse. After being found ineligible for short-term disability benefits due to an exclusion for conditions related to workplace injuries, Ms. Andrews applied for long-term disability benefits with RSL in early 2022.

27. During the early administration of Ms. Andrews's claim, RSL obtained medical records that included an MRI result showing issues with Ms. Andrews's cervical spine (at C3-4 and C5-6), demonstrations of decreased ranges

of motion in the left shoulder, observed pain behaviors, and direct examination results noting symptoms consistent with CRPS, such as mottled cool skin, and positive allodynia with tenderness to light touch and palpation.

28. RSL also obtained December 2021 and March 2022 records from Dr. Evans, one of Ms. Andrews's providers, confirming that she had continuing problems with severe pain and problems with endurance.

29. RSL's claim file for this period includes numerous other records that are consistent in their presentation of the disabling nature of Ms. Andrews's symptoms.

30. Notwithstanding this information, in a letter dated March 21, 2022, Anthony Vargas on behalf of RSL informed that his team was denying and closing Ms. Andrews's claim because, he claimed, they did not obtain any evidence documenting Ms. Andrews's medical status after her January 3, 2022, visit, and because it found that what evidence it did have "do not support lack of work function beyond May 17, 2021."

31. In reaching this decision, Mr. Vargas's claims team failed to conduct a proper investigation by failing to obtain certain records.

32. It also failed to obtain any functional capacity testing or any similar assessment of functionality to address its concerns., despite it clearly having the power, if not the obligation, to have done so under the policy.

33. Following this denial, Ms. Andrews, through counsel, requested a complete copy of all "relevant" documents pursuant to Department of Labor regulations.

34. RSL's response to this request was incomplete. Although the original denial noted the performance of certain reviews, none of those reviews, or claim notes relating to their performance, were included in its production.

35. In a letter dated June 28, 2022, Ms. Andrews, through counsel, addressed this omission and requested that these materials be provided. RSL did not respond to that request.

36. In the absence of any reviews being furnished which would have explained further RSL's original denial decision, Ms. Andrews submitted to a functional capacity examination ("FCE") to address RSL's conclusion that it did not have evidence to support the loss of any work function.

37. The evaluator reported that during the FCE Ms. Andrews "demonstrated severe impairments with all tested physical domains." The full conclusion from Ms. Andrews's evaluation reads as follows:

> **RECOMMENDATIONS:** Patient demonstrated severe impairments with all tested physical domains. Patient's greatest work impairments from the conditions listed above (Problem List) are the inability to maintain prolonged sustained positions and postures (esp. sitting and standing_, general weakness (see FCE grip and lift attempts), and impairments with mobility (requires sitting breaks after minimal bouts of walking). Patient is unable to lift loads from the floor. She can only walk short distances. Maximum time demonstrated on feet was 15 minutes. Movements are inefficient and transitions from sit to stand or

[*** page break ***]

crouch to stand are difficult. TUG and functional reach scores suggest she is a fall risk. Lifting is performed with no crouching only a hip hinge at the waist. Patient's maximum lift was 15 lbs. with ambulation restrictions. Patient is unable to sit sustained x 1 hours without a change. She will need facultative breaks every <60 minutes. This will preclude her from working a full-time work situation.

38. This FCE also established that Ms. Andrews's exertional abilities are all well below those needed to perform medium physical demand work.

39. In fact, the outcome of this FCE was that Ms. Andrews was at not just a sub-medium demand level, but even at a sub-sedentary demand level. That being the case, Ms. Andrews very clearly was unable to perform the material and substantial duties of her regular occupation – and *any other* fulltime occupation for that matter.

40. Dr. Evans, who had been treating Ms. Andrews consistently over this time, confirmed that the FCE report, which was generated through specific and rigorous testing, was fully consistent with her own in-person observations and conclusions dating back to May 2021.

41. Dr. Evans's and the FCE report are consistent further with treatment records and the records of Ms. Andrews's other providers.

42. On September 12, 2022, Ms. Andrews, with the assistance of counsel, transmitted her appeal to RSL via facsimile and U.S. Priority mail.

43. The facsimile transmission report confirms that RSL successfully received the appeal letter on that same date, while the USPS confirms that RSL

received the mailed version of the appeal on September 15, 2022.

44. In a letter dated October 4, 2022, RSL separately confirmed its receipt of Ms. Andrews's September 12, 2022, appeal and informed that its review was underway.

45. Two and a half weeks later, RSL sent a second letter dated October 18, 2022, informing for the first time that it now considered the completion of an "Independent Medical Examination" to be needed for its review of Ms. Andrews's appeal, even though it already had been provided with a detailed FCE report and it had previously failed to obtain an IME during the initial claim administration.

46. Citing its intent to pursue this IME, RSL then informed of its "notice of our intention to take beyond 45 days to make a final decision on your client's appeal, as we are currently awaiting for the IME appointment, examination, and subsequent report."

47. On October 28, 2022, Counsel, on behalf of Ms. Andrews, declined to agree to the extension and informed RSL that its letter failed to identify any "special circumstance" since the performance of a medical review is part of every appeal from the denial of disability benefits.

48. Counsel also reminded RSL of its responsibility to provide Ms. Andrews with timely decision on her claim pursuant to Plan terms and Department of Labor Regulations and noted that RSL's decision was due on the preceding day,

or October 27, 2022 (that being the 45th day from RSL's receipt of Ms. Andrew's appeal via facsimile).

49. Despite several days having passed since being reminded of its obligations, as of the date of the filing of this Complaint, no such written decision has been received; accordingly, Ms. Andrews is now deemed to have exhausted her administrative remedies under Department of Labor regulations and Plan terms.

50. For this reason, RSL has forfeited any discretion it may have been granted by the Plan because of its failure to issue a decision within the time required.

51. Although there remain questions about the completeness of the materials RSL has produced in this case at various times, those materials known thus far to Ms. Andrews establish numerous breaches and errors committed by RSL while administering Plaintiff's claim, including:

    (a) The targeting of Plaintiff's claim for denial because ERISA governs;

    (b) The failure by RSL to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

11

(c) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of her claim;

(d) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all of her claim;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Failing to accord any weight to Plaintiff's medical providers who personally examined the Plaintiff on a regular basis, and instead relying only on nurse reviewers who are unqualified to overrule such physicians;

(g) Failing to adhere to the terms of the Plan and Department of Labor regulations, such as those governing the review of adverse benefit determinations, when a decision must be made;

(h) Purposefully limiting and curtailing the review of its medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

    (i)    Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff; and

    (j)    Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how her conditions impacted one another.

52.    As set forth above regarding RSL's fiduciary breaches, RSL's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff.

53.    Employees who were responsible for the administration of Plaintiff's claim for benefits are eligible to receive bonuses and awards based at least in part on company profitability.

54.    RSL considered the applicability of ERISA before making its original decision. This presents an additional reason for application of a *de novo* standard to their claim decision, and to excuse the Plaintiff from further utilization of RSL's claim process.

55.    RSL did not provide Plaintiff with a meaningful opportunity for a full and fair review of her claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

56.    RSL's decision process has not comported with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must

comport with Department of Labor regulations. In fact, in this instance, by failing to render any decision on Plaintiff's appeal as of the filing of this lawsuit, RSL did not issue any such written decision *at all*.

57.   Plaintiff has exhausted all Plan remedies even though RSL's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tanya Andrews respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

a.   For an order awarding Plaintiff all benefits due and owing in accordance with the terms of the Plans and Policies identified in this Complaint, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b.   For a judgment against RSL and the Plan awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c.   For an order requiring RSL and the Plan to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d.   Such other relief as may be deemed just and proper.

Respectfully submitted,

_____
M. Clayborn Williams
(ASB-9101-A43M)

**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402-0087
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Tanya Andrews
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**

Reliance Standard Life Insurance Company
c/o CT Corporation
2 North Jackson Street
Suite 605
Montgomery, AL 36104